UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON, et al.,

                Petitioners,

-against-

DRYADES YMCA,

                Respondent.

24 Civ. 6103 (JPC) (GS)

**REPORT & RECOMMENDATION**

-----------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

Before the Court is Petitioners' motion to appoint an umpire for an upcoming arbitration arising from an insurance coverage dispute between Petitioners and Respondent. (Dkt. No. 3). The parties agree that the Court should appoint an umpire, but they disagree over what type of umpire should be appointed and have proposed competing slates of candidates. The motion was referred to me by the Honorable John P. Cronan for a report and recommendation. (Dkt. No. 8).[1] For the

---

[1] The sole relief sought in this case is an order designating and appointing an umpire. (Dkt. No. 1). Once that order is entered, the case will be closed. *See Certain Underwriters at Lloyd's, London v. Falls of Inverrary Condominiums, Inc.*, No. 22 Civ. 8612 (VEC), 2023 WL 2784513, at *3 (S.D.N.Y. Apr. 5, 2023) ("As [the appointment of an umpire] is the only relief sought in this case, the Clerk of Court is respectfully directed to terminate the open motion at docket entry 3 and to CLOSE the case without prejudice to either party reopening the case within thirty days if [the designated umpire] is unable or unwilling to serve as umpire in this matter."). I therefore treat the motion as dispositive and as requiring a report and recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See L & M Auto Repair, LLC v. Fed. Mut. Ins. Co.*, No. 23-CV-1203-TC-TJJ, 2024 WL 2874588, at n.1 (D. Kan. May 10, 2024) (proceeding by report and recommendation because "a decision appointing an umpire would be dispositive"); *Poling v. Chubb Lloyds Ins. Co. of Texas*, A-05-CA-253 LY, 2005 WL 8155234, at *2 (W.D. Tex. Nov. 21, 2005) (issuing ruling on motion to appoint an umpire in the form of a report and recommendation "out of an abundance of caution," while noting that such a motion "is not a classic example of a dispositive motion").

reasons set forth below, I respectfully recommend that Petitioners' motion be **GRANTED** and that the Honorable Frank Maas (Ret.) be appointed to serve as umpire for the arbitration.

## BACKGROUND

On August 29, 2021, properties owned by Respondent Dryades YMCA ("Dryades") were damaged when Hurricane Ida made landfall near New Orleans. (Dkt. No. 1 ("Petition") ¶¶ 23-24). Dryades made a claim for the alleged property damage under a Commercial Property Insurance Policy (the "Policy") issued by Petitioners Certain Underwriters of Lloyd's, London; Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; United Specialty Insurance Company; Lexington Insurance Company; General Security Indemnity of Arizona; HDI Global Specialty SE; Old Republic Union Insurance Company; GeoVera Specialty Insurance Company; Safety Specialty Insurance Company; and Transverse Specialty Insurance Company (the "Insurers"). (*Id.* ¶¶ 1-11, 19, 24).

A coverage dispute arose, and in July 2023, Dryades filed suit in Louisiana state court, claiming the Insurers breached the Policy and acted in bad faith in failing to provide coverage. (*Id.* ¶ 25; *see Dryades YMCA v. Certain Underwriters at Lloyds, London*, Civ. Action No: 23-3411, 2024 WL 398429, at *1 (E.D. La. Jan. 31, 2024)). The Insurers removed the action to federal court and filed a motion to compel arbitration based on an arbitration clause in the Policy. (Petition ¶ 26). The arbitration clause requires that "[a]ll matters in difference between [Dryades and

the Insurers] in relation to this insurance" be decided by arbitration in New York. (Dkt. No. 4-1 § VII.C (the "Arbitration Clause")).

In support of their motion, the Insurers argued that the Arbitration Clause was enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and the Federal Arbitration Act, 9 U.S.C. §§ 201-08 (the "FAA"). *Dryades*, 2024 WL 398429, at *1. Dryades countered that the Arbitration Clause was invalid under Louisiana Revised Statutes § 22:868, which prevents the enforcement of arbitration clauses in insurance contracts delivered in the state, and that the McCarran-Ferguson Act, 15 U.S.C. § 1012, "reverse-preempts"[2] the FAA in insurance cases, thereby allowing for Section 22:868 to control. *Dryades*, 2024 WL 398429, at *2.

In a decision issued on January 31, 2024, the Honorable Jane Triche Milazzo of the Eastern District of Louisiana granted the Insurers' motion to compel arbitration. *Id*. at *3. In rejecting Dryades' position, Judge Milazzo relied on Fifth Circuit precedent holding that where, as here,[3] a foreign insurer is a party to the insurance policy, the Convention supersedes state law and the McCarran-Ferguson Act's reverse-preemption provision, which is limited to Acts of Congress, is inapplicable. *Id*. at *2 (discussing *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 732 (5th Cir. 2009)). Accordingly, Judge Milazzo

---

[2] Reverse-preemption refers to legislatively created exceptions that preserve statutes from preemption that would otherwise be superseded by "the usual rules of preemption." *Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 43 (2d Cir. 1995).

[3] It is undisputed that many of the members subscribing to the Policy through the Lloyd's of London insurance market are U.K. entities and that Petitioner HDI Global Specialty is a German corporation. *Id*. at *2; *see* Petition ¶¶ 1, 8.

3

concluded, "the Convention applies to [Dryades'] claims against [the Insurers], and it must arbitrate them." *Id.*

In accordance with the Arbitration Clause, the parties proceeded to pick one arbitrator each to sit on the Arbitration Tribunal that will decide the dispute. (Petition ¶ 28; *see* Dkt. No. 4-1 § VII.C).  Under the Arbitration Clause, the two arbitrators must then attempt to appoint, "by mutual agreement," an "Umpire to whom the matter in difference shall be referred." (Dkt. No. 4-1 § VII.C).  To that end, each of the arbitrators proposed various candidates to serve as umpire.  The Insurers' arbitrator proposed four New York-based retired judges and two New York insurance attorneys.  (*Id.* ¶¶ 31, 34-35).  Dryade's arbitrator proposed four Louisiana-based retired judges and four other mediators and insurance attorneys based in Texas, Tennessee, and Florida, one of whom is a former Florida state court judge.  (*Id.* ¶¶ 30, 33, 37-38).

Over a four-month period, the two arbitrators tried to amicably select an umpire from these candidates, but ultimately failed to reach agreement.  (*Id.* ¶¶ 29, 39).  The Arbitration Clause provides a mechanism for choosing an umpire in that situation: "If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court." (Dkt. No. 4-1 § VII.C).  Pursuant to the Arbitration Clause, the Insurers commenced this action on August 12, 2024 with the filing of the Petition and a motion seeking the appointment of an umpire. (Dkt. Nos. 1, 3).

In support of their motion, the Insurers submitted a memorandum of law (Dkt. No. 5 ("Pet. Br.")) and a declaration from counsel attaching the Policy and a biography and curriculum vitae for each of the 14 umpire candidates nominated by the parties (Dkt. No. 4 ("Decl.")). On September 27, 2024, Dryades answered the Petition and submitted a memorandum of law in opposition to the motion. (Dkt. No. 29 ("Answer"); Dkt. No. 30 ("Resp. Br.")). The Insurers submitted a reply brief on October 18, 2024 (Dkt. No. 33 ("Reply")).

## DISCUSSION

### A. Authority to Appoint an Umpire

Section 5 of the FAA authorizes a court to appoint an arbitrator or umpire if there is a "lapse" in the naming of an arbitrator or umpire under the parties' chosen method of selection:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]

9 U.S.C. § 5. Further, Section 206 of the FAA, which applies in cases governed by the Convention, provides that a court may "appoint arbitrators in accordance with the provisions of the [parties'] agreement." 9 U.S.C. § 206.

5

A "lapse" occurs under Section 5 "where the parties have embarked on a contractually agreed-upon umpire selection process by proposing candidates to serve as umpire but cannot agree on a candidate." *Certain Underwriters at Lloyd's, London v. Falls of Inverrary Condominiums, Inc.*, No. 22 Civ. 8612 (VEC), 2023 WL 2784513, at *1 (S.D.N.Y. Apr. 5, 2023); *see Odyssey Reinsurance Co. v. Certain Underwriters at Lloyd's London Syndicate 53*, 615 F. App'x 22, 23 (2d Cir. 2015) (lapse exists where "[e]ach party has designated its own pick, whom the other side refused").

The record here makes clear that a lapse has occurred. The Petition alleges, and Dryades' Answer admits, that the parties' selected arbitrators "tried, but failed, to agree on an umpire" and that "the Court's appointment of an umpire is necessary because the party-appointed arbitrators cannot agree upon an umpire candidate." (Petition ¶¶ 29, 42; Answer ¶¶ 29, 42). Further, the Arbitration Clause in the Policy states that if the party-appointed arbitrators are unable to reach agreement, either side "may request the selection be made by a judge of a New York court." (Dkt. No. 4-1 § VII.C). Dryades does not dispute, for purposes of this proceeding, that this Court has the authority to designate and appoint a neutral umpire. (Answer at 1).

The Court is therefore satisfied that it has the authority to appoint an umpire in this case pursuant to the FAA and the Arbitration Clause.

### B. The Parties' Competing Positions on Selecting an Umpire

The Insurers argue that a New York-based umpire should be appointed because, under the Arbitration Clause, the arbitration is to be conducted in New York and governed by New York law. (Pet. Br. at 7-9; *see* Dkt. No. 4-1 § VII.C ("The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.")). Dryades, however, contends that Louisiana law rather than New York law will apply to the parties' dispute. According to Dryades, "choice of law is a crucial issue that will be decided by the umpire once appointed" and "permitting a New York umpire to decide that issue would not fulfill the requirement that the umpire be neutral to each party's position." (Resp. Br. at 1-2). Instead, Dryades submits that "a non-Louisiana and non-New York attorney" would be best suited to act as the "neutral umpire," urging selection of one of its candidates from Texas, Tennessee, or Florida. (*Id.* at 6, 10-12).[4]

Dryades argues that the New York choice-of-law provision in the Arbitration Clause is unenforceable under Louisiana Revised Statutes § 22:868—the same statute that Dryades unsuccessfully claimed invalidated the Arbitration Clause itself in the Eastern District of Louisiana. (Resp. Br. at 3-6; *see* La. Stat. Ann. § 22:868 (prohibiting certain insurance contracts from containing a requirement that the contract "be construed according to the laws of any other state or

---

[4] Consistent with this position, and because Dryades makes no other argument in favor of appointment of a Louisiana-based umpire, the Court assumes that Dryades has effectively withdrawn from contention the Louisiana-based judges it previously proposed.

7

country")). Dryades contends that the Convention, which was the reason why its opposition to the Insurers' motion to compel arbitration failed under Fifth Circuit precedent, "do[es] not discuss choice of law provisions in contracts, much less create an expectation that a party could escape the vital public policy of a relevant jurisdiction." (Resp. Br. at 5). Dryades also notes (*id.* at 7-9) that, in contrast to the Fifth Circuit, the Second Circuit has held that the McCarran-Ferguson Act *does* reverse-preempt the Convention. *Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 45 (2d Cir. 1995) (reasoning that "the Convention is not self-executing" and "relies upon an Act of Congress for its implementation"). As a result, two district judges in this District, ruling in the context of Hurricane Ida coverage disputes involving foreign insurers, have held arbitration clauses to be unenforceable under Section 22:868. *See Certain Underwriters at Lloyds, London v. 3131 Veterans Blvd. LLC*, No. 22 Civ. 9849 (LAP), 2023 WL 5237514 (S.D.N.Y. Aug. 15, 2023); *Certain Underwriters at Lloyd's, London v. Mpire Props., LLC*, No. 22 Civ. 9607 (RA), 2023 WL 6318034 (S.D.N.Y. Sept. 28, 2023).

In response, the Insurers argue that Dryades' argument fails "because New York law unquestionably applies." (Reply at 2). The Insurers cite two recent Southern District decisions of their own, also arising from Louisiana hurricane coverage disputes, rejecting the argument that Section 22:868 invalidated an insurance policy's New York choice-of-law clause and finding the clause controlling under New York choice-of-law principles. *See Ram Krishana, Inc. v. Mt. Hawley Ins. Co.*, No. 22 Civ. 3803 (JLR), 2024 WL 1657763, at *4 (S.D.N.Y. Apr. 17, 2024);

*La. Revitalization Fund LLC v. Starr Surplus Lines Ins. Co.*, No. 23 Civ. 1006 (VSB) (VF), 2024 WL 1337617, at *3-5 (S.D.N.Y. Mar. 27, 2024).[5] The Insurers further argue that the cases cited by Dryades are inapposite because here the Louisiana federal court "already ordered this matter to arbitration." (Reply at 3; emphasis omitted).

To the extent the Insurers ask for a ruling on this motion that New York law governs the parties' coverage dispute, the Court declines the invitation. As Dryades correctly states, it will be up to the Arbitration Tribunal to decide the choice-of-law question. (Resp. Br. at 1, 3, 5). The Arbitration Clause, which the Insurers themselves have successfully invoked to compel arbitration, confides "[a]ll matters in difference" between the parties for resolution by the Arbitration Tribunal. (Dkt. No. 4-1 § VII.C). The parties' dispute over what law applies is one such matter. *See, e.g.*, *Life of Am. Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412 (5th Cir. 1984) ("whether there is reason to ignore the choice-of-law clause agreed to by the parties is a matter to be decided by the arbitrator"); *Certain Underwriters at Lloyd's London v. Edouch Elsa Indep. Sch. Dist.*, No. 23 Civ. 8957 (PAE), 2024 WL 1514020, at *10 (S.D.N.Y. Apr. 8, 2024) ("The choice of law ultimately will be for the [arbitration] panel, not this Court, to decide."); *High Country Dealerships, Inc. v. Polaris Sales, Inc.*, No. 1:18-cv-00078-MR-DLH, 2018 WL 3620494, at *3 (W.D.N.C. July 30, 2018) ("Whether the Minnesota choice of law clause . . . supplants North

---

[5] The court in *La. Revitalization Fund*, for the sake of completeness, conducted a choice-of-law analysis on the assumption that the New York choice-of-law clause was not controlling and concluded that "[u]nder such an analysis, Louisiana law would apply to the parties' dispute." 2024 WL 1337617, at *5-8.

Carolina statutory law under the circumstances of this case, can and should properly be decided by the arbitrator."); *Discount Trophy & Co. v. Plastic Dress-Up Co.*, No. 3:03CV2167 (MRK), 2004 WL 350477, at *4 (D. Conn. Feb. 19, 2004) ("DTC's arguments regarding the interpretation and legality of the parties' choice-of-law provision will be decided as an initial matter by an arbitrator, rather than a judge. . . . [T]hat is precisely what the parties' arbitration clause requires.").

At the same time, the Court rejects Dryades' argument that the New York-based umpires proposed by the Insurers would not be "truly neutral" because, being "more familiar with New York law," they would be "more likely predisposed to agreeing with" the Insurers' position on the choice of law question. (Resp. Br. at 10). Dryades cites no authority for this argument and points to nothing in the backgrounds of the New York-based proposed umpires to suggest they could not impartially decide the choice of law question in this case. Dryades' argument is particularly ill-conceived as it relates to the four former federal judges nominated by the Insurers. A federal judge is a quintessential example of a neutral and disinterested umpire. All four of the Insurers' nominees honorably served in that capacity for many years. Undoubtedly they all applied the law of states other than New York on numerous occasions in deciding contractual disputes and other controversies. Nor does the Court have any doubt they continue to act neutrally and impartially in their role as arbitrators.

Whatever state's law is ultimately found to apply, the fact remains that the Arbitration Clause calls for application of New York law. At a minimum, the

Arbitration Tribunal may need to apply New York choice-of-law principles in conducting the choice of law analysis Dryades seeks;[6] further, Dryades' choice-of-law argument, as described above, requires examination of complex issues of federal law arising under the FAA and McCarran-Ferguson Act. In addition, there is no dispute that the arbitration between Dryades and the Insurers will be seated in New York, making it more efficient (and less costly) for a New York-based umpire to attend.

Under similar circumstances, courts in this District have concluded that a New York-based former federal judge would be best suited to act as umpire. *See Edouch*, 2024 WL 1514020, at *10 ("[T]he Court cannot ignore that the Arbitration Agreement lists New York as the seat of arbitration and states that the panel is to apply New York law. These factors favor an umpire based in New York whose career has made them familiar with New York law."); *Falls of Inverrary*, 2023 WL 2784513, at *2 ("The Court finds a former judge who previously presided in a New York-based court is best suited to serve as an umpire in this matter in light of the vast experience that New York-based judges have applying New York law and resolving complex disputes.").

The Court reaches the same conclusion here. As Dryades has proposed no New York-based candidates of its own and has presented no sound argument favoring appointment of a non-New York, non-Louisiana based umpire, the Court

---

[6] The Court expresses no opinion on this issue either.

thus confines its consideration to the New York-based candidates proposed by the Insurers.

### C. Selection of an Umpire

The four retired New York-based federal judges nominated by the Insurers include former Southern District Magistrate Judges Michael Dolinger, Frank Maas, and Henry Pitman and former Eastern District Judge John Gleeson. (Petition ¶ 31). Before selecting an umpire, the Court must consider two circumstances that could limit its consideration of these candidates: (1) the language of the Arbitration Clause and (2) Dryades' objection to one of the candidates.

The Arbitration Clause states: "Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims." (Dkt. No. 4-1 § VII.C). Do the Insurers' candidates who are retired federal judges qualify under this provision? The Insurers' moving brief contends they do, asserting they "all have extensive experience handling insurance-related cases as a judge, umpire, and mediator in New York," and that courts have found such experiences "sufficient to satisfy this particular condition in the Arbitration Clause." (Pet. Br. at 14).

Some courts have agreed with the Insurers' position. *See Falls of Inverrary*, 2023 WL 2784513, at *2 (appointing former Judge Gleeson to serve as umpire under identical contractual provision and finding this qualification encompasses "individuals who currently have a practice including arbitration or mediation of insurance-related matters"); *Clean Pro Carpet & Upholstery Care, Inc.*, Civil Action

12

No. 20-1550, 2022 WL 1470584, at *2 (E.D. La. Apr. 25, 2022) ("This language does not require that the umpire be employed by an insurance company. Having handled similar cases [as a judge, mediator, and arbitrator], Judge Belen meets the Arbitration Clause's experience requirement and is an ideal choice for the umpire in this arbitration."). But at least one judge in this District has rejected the Insurers' "capacious understanding" of the "senior position" language of the provision. *Certain Underwriters at Lloyds, London v. Dupuy Storage & Forwarding, L.L.C.*, No. 23 Civ. 5096 (JSR), Dkt. No. 30 at 3 (S.D.N.Y. Dec. 11, 2023) (declining to consider Judges Dolinger, Gleeson, or Maas in light of this language).

Here, however, Dryades did not indicate any disagreement with the Insurers' position in its opposition brief, despite the Insurers' opening brief having raised the issue. Moreover, Dryades itself nominated several retired judges to act as umpire. (Petition ¶¶ 30, 37-38; Answer ¶¶ 30, 37-38). Dryades thus can be said to have "otherwise agree[d]," within the meaning of the relevant provision, to the selection of a retired judge regardless of whether that person is "employed or engaged in a senior position in Insurance underwriting or claims." (Dkt. No. 4-1 § VII.C). Even if that is not so, Dryades has waived any argument that a retired judge should not be selected as umpire on this ground by failing to raise the issue in its opposition brief. *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments not addressed in its opposition brief). In either event,

this provision of the Arbitration Clause does not pose an obstacle to appointment of one of the retired New York judges nominated by the Insurers.

Dryades advances an unrelated objection to one of the candidates, former Magistrate Judge Dolinger. Dryades suggests that Judge Dolinger may have a conflict of interest because, when he was an Assistant U.S. Attorney in the Civil Division of the U.S. Attorney's Office, he defended the United States in "personal injury and other tort claims under the Federal Tort Claims Act." (Resp. Br. at 13 (citing Dkt. No. 4-2 at 1)). This objection is, to put it charitably, insubstantial. Judge Dolinger left the U.S. Attorney's Office in 1984, before beginning his illustrious 31-year tenure as a Magistrate Judge, followed by nearly a decade of service as a neutral mediator and arbitrator. (*See* Dkt. No. 4-2). He is fully qualified to serve as a neutral and impartial umpire in this matter.[7]

In fact, all four of the four former judges nominated by the Insurers are fully qualified and any one of them would be an excellent choice to serve as umpire. I believe that the Honorable Frank Maas is the most appropriate choice for this case. He served as a Magistrate Judge for 17 years and has eight years of experience as a private arbitrator and mediator for JAMS. As a judge, he presided over insurance coverage disputes and settled many others, including property insurance claims arising out of Hurricane Irene. (Dkt No. 4-3 at 4-5). A Westlaw search discloses more than a dozen published opinions by Judge Mass in insurance cases. Since

---

[7] Dryades also objects to the two insurance attorneys proposed by the Insurers, claiming their backgrounds reflect close ties to insurance companies. (Resp. Br. at 13). Because the Court believes that a former judge would make a more suitable umpire, the Court does not address these objections.

14

joining JAMS, he has continued to work as a neutral in significant insurance cases. *See* Petition to Confirm Arbitration Award, *N.Y. Life Ins. Co. v. John Hancock Life Ins. Co.*, 2023 WL 9688405 (Sup. Ct. N.Y. Cnty. Nov. 18, 2023) (chosen by parties' arbitrators to be neutral umpire in dispute over reinsurance transaction); Motion to Compel, *Merck & Co. v. ACE Am. Ins. Co.*, 2019 WL 13160548 (N.J. Super. Ct. Sept. 6, 2019) (special discovery master in insurance coverage dispute).[8]

I therefore recommend that Frank Maas be chosen to act as umpire in the upcoming arbitration involving the Insurers and Dryades.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Insurers' motion be **GRANTED** and that Frank Maas be appointed as umpire.

DATED:   New York, New York
         November 21, 2024

_____
The Honorable Gary Stein
United States Magistrate Judge

---

[8] Judges Dolinger and Gleeson also have substantial experience with insurance coverage disputes, both as judges and as private arbitrators, and have recently been appointed to serve as neutral umpires in similar disputes. *See Certain Underwriters at Lloyd's London v. Weslaco Indep. Sch. Dist.*, No. 24 Civ. 3967 (GHW), 2024 WL 3560792 (S.D.N.Y. July 25, 2024) (appointing Judge Dolinger); *Edouch*, 2024 WL 1514020, at *12 (same); *Falls of Inverrary*, 2023 WL 2784513, at *3 (appointing Judge Gleeson). However, with the caveat that the Court does not know the current status of these arbitrations, it is not necessarily a positive that the umpire in this case be simultaneously involved in other similar insurance coverage disputes.

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to Judge Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).